STATE of North Dakota, Plaintiff
and Appellee,

v.

Ray Edward LEWIS, Defendant
and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Susan A. LEWIS, Defendant
and Appellant.

Cr. Nos. 940144, 940145.

Supreme Court of North Dakota.

Feb. 8, 1995.

Michel W. Stefonowicz (argued), State's Atty., Crosby, for plaintiff and appellee.

Michael R. Hoffman (argued), Bismarck, for defendants and appellants.

LEVINE, Justice.

Ray Edward Lewis and Susan A. Lewis appeal from judgments of conviction for manufacturing a controlled substance, which were entered on conditional pleas of guilty under N.D.R.Crim.P. 11(a)(2) and reserved their right to challenge the trial court's denial of a pretrial motion to suppress evidence seized during a search of their home. Because the search warrant was issued without probable cause, we reverse the judgments and remand to the trial court to allow the Lewises to withdraw their guilty pleas.

On April 14, 1993, Jeff White, a special agent with the North Dakota Bureau of Criminal Investigation, executed an affidavit and testified before a magistrate in support of a warrant to search the Lewis residence in rural Ambrose, for "marijuana plants, marijuana and marijuana derivatives." White said he had been employed as a special agent since 1985, and was assigned primarily to narcotics investigations. After listing his drug enforcement training experience, he said he had "personally been involved in approximately 15 indoor marijuana growing operation investigations throughout the state...."

According to White, two weeks earlier, Jeff Stickney, a United States drug enforcement agent, told him federal investigators were conducting a nationwide undercover drug operation called "Operation Green Merchant," in which they obtained customer records from "indoor growing operation supply houses" across the country to "attempt to identify people ordering equipment consistent with indoor marijuana growing operations." Stickney told White that customer records subpoenaed from Aqua Culture in Tempe, Arizona, showed Ray Lewis of Ambrose had ordered and received several items from the store between October 8, 1990 and May 3, 1991. These items included "thousand watt metal halide light bulbs, extenders for the growing room, $CO^2$ regulators for $CO^2$ bottles, ... a solar shuttle ..., pH soil testers, things of that nature." White then contacted a fellow special agent, Dallas Carlson, who checked with local authorities and learned that there was only one Ray Lewis living in Divide County and that he used to live in Ambrose, but now lived on a farm approximately one-half mile west of Ambrose.

At 3 a.m. on April 14, 1993, White and Sheriff Paul Peterson went to the Lewis farmstead and performed "a visual inspection of the Lewis residence" using a "thermal imaging device, which is a heat differential device which [shows] ... excessive heat losses through houses...." White, who was trained to use the thermal imaging device, said because "those thousand watt sodium halide bulbs are generally very warm in the grow rooms," the device can detect "hot spots" on the houses unless they are very well insulated. According to White,

> "While looking through that at the west side of the house on the second story, I observed normal heat loss through the doors and the gable areas and the cement block areas in the basement, but in addition to that I noticed an unusual heat loss in the upstairs second story on the west side of the residence coming through the siding board where there would normally be insulation between the studs, indicating that there was excessive heat in the upstairs of the residence."

When daylight came, White visually inspected the residence and observed that the west-side window on the second story of the house, "above the unexplained heat loss," "was covered with what appeared to be styrofoam insulation and the south window was covered with what appeared to be fiberglass insulation, while the east window was not covered at all." According to White, "covering windows to hide light, heat loss, or visual inspection of plants is common to indoor grow operations and [he] has in fact observed this tactic on all of his previous indoor grow room investigations."

White and Peterson then obtained the Lewises' electrical consumption records from the local office of Montana–Dakota Utilities. Those records showed that the electrical consumption on the farmstead was "small," between 70 to 700 kilowatt hours per month from April 1990 until September 1990, when it "jumped up to 1700 kilowatt hours per month and from that point on until today, they've averaged approximately 1600 kilowatt hours per month." White considered that consumption "excessive" for a family of four because the Lewises have a "fuel oil furnace and no central air conditioning, no other outbuildings," and the "amounts were more than everybody else is paying, or appear to be paying for normal use of electricity...."

White also stated he had learned from Williams County Deputy Sheriff Scott Busching, who "has an informant (untested) who is working in the Crosby/Ambrose area[,] that there was an indoor grow operation going in the area." White said "[t]his informant was told by an individual here in town ... this past weekend that they were unable to buy any marijuana at this time ... but that they were expecting a harvest...."

In response to the magistrate's question whether White was "convinced that the man is not growing tomatoes," White testified,

> "Yes. The fact that the windo[w]s are covered indicates to me a need for privacy and not wanting anybody to see what's going on even though it was on a second story window, and that the two windows were covered on the part of the house where the hot spots were, and the two

windows weren't covered on the part of the house where the hot spots weren't. That indicates to me that they're hiding something or attempting to hide something."

The magistrate determined that probable cause existed and issued a search warrant for the house. During the search, officers found processed marijuana and growing marijuana plants. The indoor marijuana grow operation was found in the basement of the house. The Lewises were charged with manufacturing a controlled substance in violation of N.D.C.C. § 19–03.1–23(1)(b).

The Lewises moved to suppress the evidence discovered during the search. They argued that there was no probable cause to issue the search warrant and that the warrantless use of the thermal imaging device was itself an unconstitutional search. They also argued that, when White applied for the search warrant, he intentionally or recklessly omitted evidence in an effort to mislead the magistrate. During a preliminary hearing, Peterson had testified that Susan Lewis was known locally as "the plant lady" and that he knew "she's got a lot of plants." He further testified that he told White about this before the search was conducted and mentioned to him the possibility "she's growing Boston ferns, tomatoes." White did not present that information to the magistrate.

The trial court denied the suppression motion. The court held that the warrantless use of the thermal imaging device was not an unconstitutional search and that the evidence given to the magistrate provided a substantial basis for concluding that probable cause existed. The trial court noted that Susan Lewis' reputation as a "plant lover" had "obvious implications which would have been of probative value to the magistrate," but did not "find the absence of presentation of this information to the magistrate to be fatal" to the probable cause determination.

On appeal, the Lewises assert that White's use of the thermal imaging device was a warrantless search in violation of the state and federal constitutions, relying on the position adopted by a minority of courts. *See United States v. Field*, 855 F.Supp. 1518 (W.D.Wis.1994); *United States v. Ishmael*, 843 F.Supp. 205 (E.D.Tex.1994); *State v.*

*Young*, 123 Wash.2d 173, 867 P.2d 593 (1994). The majority of courts having considered the issue has ruled that the warrantless use of such devices is not unconstitutional. *See, e.g., United States v. Ford*, 34 F.3d 992 (11th Cir.1994); *United States v. Pinson*, 24 F.3d 1056 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 664, 130 L.Ed.2d 598 (1994); *United States v. Domitrovich*, 852 F.Supp. 1460 (E.D.Wash.1994); *United States v. Porco*, 842 F.Supp. 1393 (D.Wyo.1994); *United States v. Penny–Feeney*, 773 F.Supp. 220 (D.Hawaii 1991), *aff'd on other grounds*, 984 F.2d 1053 (9th Cir.1993); *State v. Cramer*, 174 Ariz. 522, 851 P.2d 147 (Ct.App.1992); *State v. McKee*, 181 Wis.2d 354, 510 N.W.2d 807 (1993). We need not decide the issue here, however, because we agree with the Lewises that, even with the information obtained through use of the thermal imaging device, the evidence submitted to the magistrate was insufficient to support a determination of probable cause.

 Whether probable cause exists is a question of law. *Woehlhoff v. State*, 487 N.W.2d 16, 18 (N.D.1992). A trial court reviewing the validity of a search warrant decides if the information before the magistrate established probable cause to search. *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994). In an appeal from a decision denying a suppression motion on this ground, we perform the same function, independent of the trial court's decision. *See State v. Frohlich*, 506 N.W.2d 729, 732 (N.D.1993). "[P]robable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). We use the totality-of-the-circumstances test for reviewing probable cause, where " '[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Ringquist*, 433 N.W.2d at 211 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). If there is a substantial basis for the magistrate's

conclusion that probable cause exists, we will not disturb that conclusion on appeal. *State v. Dymowski*, 458 N.W.2d 490, 498 (N.D. 1990).

This case does not materially differ from *State v. Ennen*, 496 N.W.2d 46 (N.D.1993). In *Ennen*, the magistrate was presented information that the defendant was a known drug user; his water usage during a three-month period, which coincided with the growing cycle of marijuana, was unusually high; his electrical consumption records were slightly higher than normal; the shades to his house were drawn; and, in the opinion of a special agent, closed shades indicate illegal drug usage is occurring in the house and high water usage suggests a marijuana growing operation is being conducted in the house.

We held that this evidence did not establish a substantial basis to believe that evidence connected with criminal activity would be found at the defendant's house. The defendant's reputation as a known drug user was a "bare conclusion," "devoid of evidentiary support," and could not justify a finding of probable cause. *Ennen*, 496 N.W.2d at 50. The increased water usage for a three-month period in the summer was consistent with the experience of most homeowners and the growing cycle of marijuana was consistent with the growing cycle of other vegetables. *Id.* The defendant's drawn shades raised "no significant inference," and we deemed the special agent's assertions that closed shades indicate illegal drug use and high water usage suggests illegal growing of marijuana as "unlikely at best." *Id.*

■ In this case, the magistrate was presented with evidence that Ray Lewis ordered and received equipment "consistent" with indoor marijuana growing operations, but which could also be used to grow other legal plants and vegetables. The magistrate was not informed that either selling or possessing this equipment was illegal, nor does the State make that assertion on appeal. The thermal imaging device, styrofoam and fiberglass insulation on windows, and increased electrical usage perhaps indicated that the Lewises were using the equipment Ray had purchased to grow something in the house.

However, the evidence must show a nexus between the home to be searched and the contraband sought. *See Frohlich*, 506 N.W.2d at 733; *State v. Erickson*, 496 N.W.2d 555, 559 (N.D.1993); *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983). The contraband sought in this case was marijuana, not indoor growing equipment. The indoor growing equipment could be considered contraband only to the extent it was being used to grow marijuana. The nexus between the Lewis home and the probability of marijuana being found there was not supplied by either direct or circumstantial evidence.

■■ White's testimony about an upcoming harvest from a marijuana grow room operation in the area does not supply the nexus. Not only does it fail to implicate the Lewises or their residence in any illegal activity, but that information was derived from a deputy sheriff's "untested" informant who purportedly heard the story from "an individual here in town." An anonymous informant must supply information from which one may conclude that the informant is honest and his information reliable, or from which the informant's basis of knowledge can be assessed. *State v. Thompson*, 369 N.W.2d 363, 367 (N.D.1985). If the informant does not supply the information necessary to evaluate the tip, the police must, through independent investigation, corroborate the tip or develop other sources of information leading to the conclusion that evidence of a crime will probably be found in a particular place. *Woehlhoff*, 487 N.W.2d at 18. Because none of that was done here, this conclusory information cannot support a finding of probable cause. *See Ennen*, 496 N.W.2d at 50.

White's testimony that covering windows with insulation to hide light, minimize heat loss, and prohibit visual inspection of plants is common to indoor marijuana grow operations, and that he has observed this "tactic" on his other investigations is also insufficient to supply the nexus. Weatherproofing one's home for winter weather in North Dakota, which can extend well into the month of April and beyond, is hardly unusual. Moreover, insulating windows with styrofoam and fiberglass to minimize heat loss, which will obviously prohibit visual inspection, is as consis-

 

tent with an illegal marijuana grow operation as it is consistent with a legal attempt to grow plants and vegetables indoors. We refuse to view diligent efforts to reduce heat loss, without more, as circumstantial evidence of an indoor marijuana grow operation sufficient to support the issuance of a search warrant.

The magistrate was provided with information sufficient to conclude that probable cause existed to believe the Lewises were growing something in their home. This information may have caused suspicion on the part of authorities and warranted further investigation of the Lewises' activities. But suspicion, without anything more specific, does not amount to probable cause to search. *State v. Mische,* 448 N.W.2d 415, 422 (N.D. 1989). We conclude that there was no substantial basis for the magistrate's determination probable cause existed to believe the Lewises were growing marijuana in their home.

The State asserts that, even if probable cause did not exist, the good-faith exception to the exclusionary rule requires that the trial court's order be affirmed. Even if we were to follow the good-faith exception, an issue we have yet to decide, *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984) requires that the officers' reliance on the magistrate's determination of probable cause be "objectively reasonable." The implication of criminal activity in this case is simply too weak and tenuous to make it objectively reasonable for the officers to rely on the warrant. *See Mische,* 448 N.W.2d at 422–423; *Thompson,* 369 N.W.2d at 372.

The judgments are reversed and the cases are remanded to the trial court to allow the Lewises to withdraw their guilty pleas.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.