1999 ND 60

STATE of North Dakota, Plaintiff
and Appellee,

v.

Jason TESTER, Defendant and Appellant.

No. 980224.

Supreme Court of North Dakota.

April 6, 1999.

Lonnie Olson, State's Attorney, Devils Lake, N.D., for plaintiff and appellee.

Tracy A. Gompf and Jeff A. Bredahl, Bredahl & Associates, Fargo, N.D., for defendant and appellant; argued by Tracy A. Gompf.

SANDSTROM, Justice.

[¶ 1] We are asked to decide if evidence seized in a search of Jason Tester and his residence should be suppressed when the warrant listed his parents' address, and whether he was entrapped as a matter of law. We conclude the district court should have suppressed evidence seized from the search of Tester's residence. We further conclude the district court appropriately denied both suppression of evidence seized as a result of the search of Tester's person, and his motion to dismiss. We affirm in part, reverse in part, and remand.

I

[¶ 2] A bank manager in Devils Lake contacted a Devils Lake police detective and reported Tester had exchanged a large number of small bills for hundred dollar bills. The investigations which followed involved the Devils Lake police and the United States Postal Service. During a nine-month period Tester had visited banks in Devils Lake, and on 15 different occasions exchanged small bills for larger ones. His exchanges totaled $33,500. On several occasions, a dog trained to detect controlled substances "hit" on the money exchanged by Tester. The U.S. Postal Service was investigating Tester because of the number of express mail packages he was sending to Colorado. The police and postal inspectors began exchanging information in March 1997. Based on drug dog "hits," federal search warrants were issued for packets of money going from Tester to "Sheldon Olson," to his wife "Pamela Olson," or to "The Olsons" in Colorado.

[¶ 3] The investigation identified 27 different packages sent by Tester to Colorado. The investigation also identified a number of incoming express mail packages from the Olsons or from Colorado to Tester, all of which were delivered to 407 Fifth Street South in Devils Lake, Tester's parents' address. Tester lived at 224 Fifth Street South #16 in Devils Lake. Many of the packages, however, included Jason Tester's phone number. The Olsons also used several different

Colorado addresses on packages sent back to Tester, but there is no evidence any of these packages, except the one intercepted, contained narcotics.

[¶ 4] The package intercepted by the Postal Inspection Service in July 1997 was addressed to Jason Tester at 407 Fifth Street South, Devils Lake. The package was tested by using a drug dog, who "hit" on the package, indicating the parcel contained controlled substances. As a result, a federal search warrant was obtained to search the parcel, and found inside were approximately 1.5 ounces of cocaine.

[¶ 5] The following day, a district judge, acting as magistrate, found probable cause for the warrant, based on the testimony of a Devils Lake police detective. Specifically, the warrant gave the officers authority to search the "407 5 St. S. Trailer House, Lauinger's Tr. Ct." for narcotics and related paraphernalia, and to search the person of Jason Tester.

[¶ 6] The postal inspector and local law enforcement went to Jason Tester's trailer home at 224 Fifth Street South "to assist with the delivery of the package, surveillance and arrest of Tester if he accepted the package." The inspector, posing as a postal carrier and equipped with electronic surveillance, approached Tester's residence with the parcel. Tester questioned why it was being delivered to his address, rather than to the address on the parcel. The inspector told him he was a substitute carrier and another postal employee had told him where Tester lived. Tester signed for the package.

[¶ 7] Approximately 10 minutes later, two law enforcement officers approached Tester's home to execute the search warrant. Although the address on the warrant was incorrect, the Devils Lake police were familiar with Tester and where he lived. The officer who approached his door had been there many times for party, fight, and dog calls. When the police approached his residence, Tester's dog barked, and Tester came out of his house. The officer motioned for Tester to come toward her and stated, "Tester, come over here I need to talk to you." As the officer approached, Tester turned and went back into his house. The officer fol-

lowed, and entered the residence. Tester, however, exited from a side door, and ran. A placebo had been placed in with a small portion of the drugs delivered to Tester's trailer, and while Tester was being chased, he poured the placebo and narcotics out. The officers gave chase and Tester was caught and arrested.

[¶ 8] Following Tester's arrest, he was charged with possession of a controlled substance with intent to deliver, a class A felony, and with tampering with physical evidence, a class A misdemeanor. Tester moved to suppress the evidence seized, based on false information given by police to the magistrate, lack of probable cause, and searching the residence at an address different from that listed in the warrant. Tester moved to dismiss the charges, based on entrapment as a matter of law. The district court denied the motions to suppress and to dismiss. Under a plea agreement, the charge of tampering with physical evidence was dismissed, and Tester entered a conditional plea of guilty to possession of a controlled substance with intent to deliver. Tester appealed the judgment of conviction.

[¶ 9] The district court had jurisdiction under N.D.C.C. § 27–05–06. Tester's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 10] Tester argues the police misled the magistrate because they told him the address the packages were sent to was Tester's, although the address was actually his parents'. To create a defective warrant by incorrect information, the police must make an intentionally false statement. *State v. Rydberg*, 519 N.W.2d 306, 309 (N.D.1994).

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In

the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* (quoting *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). "A false affidavit statement under *Franks* is one that misleads the neutral and detached magistrate into believing the stated facts exist, and those facts in turn affect the magistrate's evaluation of whether or not there is probable cause." *State v. Rangeloff,* 1998 ND 135, ¶ 9, 580 N.W.2d 593 (citations omitted).

[¶ 11] A defendant is required to prove a statement is false and its inclusion amounted to perjury or reckless disregard for the truth. *State v. Damron,* 1998 ND 71, ¶ 9, 575 N.W.2d 912 (citing *State v. Morrison,* 447 N.W.2d 272, 275 (N.D.1989)). Whether the defendant demonstrates recklessness or intentional falsity is a finding of fact. We review a district court's ruling on whether a substantial preliminary showing has been made under a standard comparable to clearly erroneous, yet separate. *Rangeloff,* 1998 ND 135, ¶ 10, 580 N.W.2d 593 (citing *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994)). "A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *Thompson,* at 581.

[¶ 12] Tester never specifically requested a *Franks* hearing, but a hearing on several motions to suppress evidence was held. Following the suppression hearing, the district court denied the motions and found the misinformation on the warrant harmless, saying there was no intentional deception by the police, because the location of the trailer park was so close to Tester's parents' house and because the police knew where Tester lived. The district court found no intentional act on the part of the police to mislead the magistrate about the address on the package.

[¶ 13] We give deference to the magistrate's factual findings if there is a substantial basis for the conclusion. *State v. Woehlhoff,* 540 N.W.2d 162, 165 (N.D.1995); *State v. Frohlich,* 506 N.W.2d 729, 732 (N.D.1993). The district court found "[t]he police knew where Mr. Tester lived even though they did not know the correct address." Regarding the incorrect address, the court found "there was no intentional act on the part of the police to mislead the Court about the address." The court further found:

> although police could have done some preliminary checking to find out what Mr. Tester's correct address was, considering the two addresses and their geographic locations within the City of Devils Lake it is understandable that the address would not be checked when block numbers are so close and law enforcement know where Mr. Tester lives. There has been no showing on the part of the defendant that there was a reckless disregard by police in finding out what Mr. Tester's correct address was.

[¶ 14] We do not have a definite and firm conviction a mistake has been made, and the court's finding Tester failed to prove by a preponderance of the evidence the detective intentionally or recklessly withheld information from the magistrate was not clearly erroneous.

### III

[¶ 15] Tester contends the district court erred in denying his motion to suppress the evidence obtained as a result of the search warrant. A district court's disposition of a motion to suppress will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994).

This standard of review acknowledges the significance of the district court's opportunity to assess the credibility of witnesses and to weigh their testimony. *State v. Knudson,* 499 N.W.2d 872, 873 (N.D.1993). A person alleging his rights have been violated under the Fourth Amendment has an initial burden of establishing a prima facie case of illegal seizure. *State v. Glaesman,* 545 N.W.2d 178, 182 n. 1 (N.D.1996). However, after the defendant has made a prima facie case, the burden of persuasion shifts to the State to justify its actions. *State v. Swenningson,* 297 N.W.2d 405, 407 (N.D.1980).

## A

[¶ 16] Tester argues the search warrant was invalid because the address listed on the warrant was his parents' and all the packages went to their address. Accordingly, Tester claims that without the misuse of his parents' address, there was insufficient evidence to show probable cause to issue the search warrant. In examining the validity of a search warrant, a district court reviews the warrant to ascertain whether the information before the magistrate established probable cause for the search. *State v. Damron,* 1998 ND 71, ¶ 5, 575 N.W.2d 912; *State v. Hage,* 1997 ND 175, ¶ 10, 568 N.W.2d 741; *State v. Rydberg,* 519 N.W.2d 306, 308 (N.D.1994). Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, and under article I, section 8, of the North Dakota Constitution. *Damron,* at ¶ 5 (citations omitted).

[¶ 17] We apply the *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), totality-of-the-circumstances test for analyzing whether probable cause exists to issue a search warrant under both the United States and North Dakota Constitutions. *State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988).

> Particularly significant in our decision to adopt *Gates* is the interrelationship of the standard of proof necessary to establish probable cause with the flexibility of the totality of the circumstances test. Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to

search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.

*Id.* (citing *State v. Mondo,* 325 N.W.2d 201 (N.D.1982)).

> Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.

*State v. Schmeets,* 278 N.W.2d 401, 406 (N.D. 1979) (quoting *Berger v. State of New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)).

[¶ 18] " 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found' " as a result of the search warrant. *See Ringquist,* 433 N.W.2d at 211 (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317). All information for probable cause must be considered together, rather than analyzed on a piecemeal basis. *State v. Mische,* 448 N.W.2d 415, 418 (N.D.1989). The question is one of law, and on appeal we review the sufficiency of the information before the magistrate, independent of the district court's decision. *State v. Metzner,* 338 N.W.2d 799, 804 (N.D.1983). A magistrate's factual conclusions in determining whether probable cause exists to issue a warrant are entitled to great deference. *Id.* The magistrate, most closely acquainted with the facts supporting the warrant and often familiar with the affiant, is allowed to exercise independent judgment and to interpret the supporting affidavit as a whole in a realistic and commonsense manner. A doubtful or marginal case should be resolved in favor of his determination of probable cause. *Id.* If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal. *State v. Dymowski,* 458 N.W.2d 490, 498 (N.D.1990).

[¶ 19] To establish probable cause for the search warrant, the Devils Lake police detective testified he believed "in the past year there's been a great traffic of money out and drugs back with the information received from postal inspectors." The officers also testified a package had been intercepted using a federal search warrant and, when tested, the package contained cocaine. The package was to be delivered the same day the warrant was requested.

[¶ 20] When the magistrate asked if the package was addressed to Jason Tester, the officer answered: "Yes. Addressed to Jason Tester, 407 Fifth Street South, Devils Lake, North Dakota." The magistrate also asked why the officers believed money was leaving Tester's residence, and the officers responded: "The information from the postal inspectors indicate that there's been several thousand dollars in the past three to four weeks gone [sic] out and probably up to [$]33,000, $35,000 in the last nine months."

[¶ 21] Applying the *Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), totality-of-the-circumstances analysis to the information before the magistrate at the warrant application hearing, that is, giving significance to each relevant piece of information and balancing the relative weights of all the information, we conclude the officers' testimony provided the magistrate with a substantial basis for finding the existence of probable cause to believe a crime was being or had been committed by Tester.

### B

[¶ 22] Tester contends there was not a sufficient "nexus" between his home and the criminal conduct. "[T]he evidence must show a nexus between the home to be searched and the contraband sought." *State v. Lewis,* 527 N.W.2d 658, 662 (N.D.1995) (citations omitted). In *Lewis,* the magistrate was presented with evidence the defendant had ordered and received equipment consistent with growing marijuana indoors, but could also be used to grow other legal plants or vegetables. *Id.* The only evidence supplied to the magistrate was the equipment had been purchased to grow something, not necessarily something illegal. *Id.* The court found the nexus lacking because the contraband sought in the case was marijuana, not indoor growing equipment. *Id.* Because the indoor equipment could be considered contraband only if it were being used to grow marijuana, the nexus between the home and the probability of actually growing marijuana was too circumstantial.

[¶ 23] In *Mische,* 448 N.W.2d at 416, this Court said evidence of criminal activity unrelated to a defendant's home is not alone sufficient probable cause to search that home. Mische had been selling drugs from his parents' home in Bismarck, and officers thought he lived there. *Id.* When the officers searched the home, they discovered a cutting agent for controlled substances, but nothing else. The officers then learned Mische also lived in a trailer in Lincoln, outside of Bismarck. The officers obtained another warrant to search that residence by simply adding to the warrant two paragraphs about the trailer home in Lincoln, basically expressing a belief drugs would be found. This Court affirmed the district court's denial that probable cause existed to search the trailer home, and held the information provided mere suspicion that did not rise to the level of probable cause. *Mische,* at 417.

[¶ 24] While Tester may have been using his parents' house as a mail drop, that does not provide a sufficient nexus. *See United States v. Rowland,* 145 F.3d 1194, 1204 (10th Cir.1998) (establishing probable cause that the delivery of contraband would take place at the defendant's post office box does not mean there was probable cause it would be at his residence when the search took place); *but cf. United States v. Gutierrez,* 891 F.Supp. 97, 102 (E.D.N.Y.1995) (address was a mailbox drop, often employed by drug couriers and money launderers as a device to avoid police detection); *United States v. Bradshaw,* 840 F.2d 871, 873 (11th Cir.1988) (the defendant used mail drops rather than his home address when mailing drugs to customers); *United States v. Thevis,* 469 F.Supp. 490, 511 (D.Conn.1979) (a post office box had been established by the defendant under an alias to provide some degree of anonymity). Following the precedent established in *Mische,* police must have more than

mere suspicion contraband exists at a particular place to satisfy the nexus requirement. We conclude there was not a sufficient nexus to search the trailer home of Jason Tester.

### C

■ [¶ 25] In addition to his residence, the search warrant authorized the search of Tester's person. *See, e.g., State v. Hage,* 1997 ND 175, ¶ 9, 568 N.W.2d 741 (a search warrant may be issued for a person). Tester has not argued here the lack of sufficient nexus to his person.

[¶ 26] The magistrate in this case had information about the number of packages sent to and received from Colorado by Tester, the numerous cash exchanges he was making at Devils Lake banks, and the "hits" by the drug dog. The magistrate also was informed that every package was addressed to Jason Tester and many listed his home telephone number. All of the evidence indicated Tester was involved in the traffic of narcotics from Colorado. Drug trafficking is inherently a protracted and continuous activity. *Ringquist,* 433 N.W.2d at 214. The police officers' interception of a package containing cocaine was part of a long investigation into the activities of Tester and the Olsons in Colorado. Once the police officers made the controlled delivery, Tester was approached. He fled from the house and was pursued by the officers, arrested, and charged. Because probable cause existed, the search of Tester's person, the seizure of evidence from Tester's person, including the drugs and placebo he was carrying and pouring out, and the subsequent arrest of Tester were valid.

### IV

[¶ 27] Tester argues the district court erred in denying his motion to dismiss based on the affirmative defense of entrapment. The entrapment defense is set forth under N.D.C.C. § 12.1–05–11(2):

A law enforcement agent perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, the law enforcement agent induces or encourages and, as a direct result, causes another person to engage in conduct constituting such a crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

■ [¶ 28] Entrapment is an affirmative defense. N.D.C.C. § 12.1–05–11(1). The defendant must prove an affirmative defense by a preponderance of the evidence. N.D.C.C. § 12.1–01–03(3). Ordinarily, entrapment is a question of fact for the jury. *State v. Barnes,* 551 N.W.2d 279, 283 (N.D. 1996). Tester, however, moved to dismiss the charges against him based on entrapment as a preliminary maneuver.

■ [¶ 29] This Court has said "the purpose of a motion to dismiss is to test the sufficiency of the information or indictment. It is not a device for summary trial of the evidence, and facts not appearing on the face of the information cannot be considered." *State v. Howe,* 247 N.W.2d 647, 652 (N.D. 1976). In later cases, we cautioned against converting a motion to dismiss into a summary trial depriving the fact-finder of its exclusive function of determining factual questions. *State v. Davenport,* 536 N.W.2d 686, 689 (N.D.1995) (citations omitted).

[¶ 30] The motion to dismiss based on entrapment was improper, and appropriately denied by the district court.

### V

[¶ 31] Other arguments presented are without merit.

[¶ 32] Because the evidence seized as a result of the search of the trailer should have been suppressed, we reverse in part. Because the evidence seized as a result of the search of Tester's person was appropriately not suppressed, we affirm in part. Because this partial reversal entitles Tester to withdraw his conditional guilty plea, *see State v. Schweitzer,* 510 N.W.2d 612, 616 (N.D.1994), we remand to give him the opportunity to do so.

[¶ 33] VANDE WALLE, C.J., NEUMANN, MARING and KAPSNER, JJ., concur.