1998 ND 71

STATE of North Dakota, Plaintiff
and Appellee,

v.

Michael Duane DAMRON, Defendant
and Appellant.

Criminal Nos. 970187 to 970189.

Supreme Court of North Dakota.

March 30, 1998.

Rehearing Denied April 28, 1998.

Wade L. Webb, Assistant State's Attorney, Fargo, for plaintiff and appellee.

Irvin B. Nodland, Bismarck, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Under a plea agreement, Michael Damron entered conditional pleas of guilty to theft of property, a class B felony in Criminal No. 970187, and five counts of tampering with or damaging a public service, all class C felonies in Criminal No. 970188. Under the agreement, a charge of burglary was dismissed. Under his conditional plea, Damron preserved the right to challenge on appeal the issuance of a search warrant and the trial court's denial of his motion to suppress evidence seized in the execution of that warrant. Damron appealed in all three cases. Because the trial court dismissed the charge of burglary, his appeal of that case, our Criminal No. 970189, is dismissed. Because the magistrate had probable cause to issue the search warrant, the judgments and convictions in Criminal No. 970187 and 971088 are affirmed.

I

[¶ 2] On or about January 21 or 22, 1995, the Site on Sound electronics store in Fargo was burglarized. On January 24, 1995, Police Officer Greg Stone presented the magistrate an application and supporting affidavit requesting a search warrant of Michael Damron's apartment. Exhibit A was attached to the application listing the items sought in the search. Items sought in Exhibit A included various burglary tools, plans of telephone communication devices or alarm systems, stolen electronic or stereo equipment, footwear with a distinctive diamond pattern in the heel print, and indicia of whose residence was being searched. Also attached to the application was Exhibit B, in which Officer Stone presented facts on which the magistrate was asked to rely to find probable cause for issuing a warrant to search Michael Damron's apartment. Exhibit B stated:

"EXHIBIT B

Det. Greg Stone, having been a police officer since 1978, with the Fargo Police Department since 1985, and currently assigned to the investigation division.

In his capacity with the Fargo Police Department, your affiant became involved in the investigation of a burglary occurring at the Site on Sound store located at 1443 Main Avenue in Fargo, North Dakota, on or about Saturday, January 21st, or the early morning hours of Sunday, January 22, 1995. Your affiant was advised by Mr. Craig (Butch) Boisjolie, owner of Site on Sound, that entry into the building was probably gained through forcible entry of a rear garage door on the back of the Site on Sound building. The burglar disabled an on-site audible alarm system inside of the Site on Sound building by cutting wires inside of the building. It was also determined that suspect must have passed through a motion detector device intended to send a silent alarm to the Fargo Police Department. It was later determined that the motion detector device was inactive because U.S. West telephone lines outside of the Site on Sound building had also been cut. Therefore, the silent alarm was inactive. Your affiant further learned in the

investigation that the burglar took approximately $60,000 worth of stereo and electronic equipment from Site on Sound by loading it into a truck which had been left inside of the Site on Sound building. The suspects then took the truck from the Site on Sound building together with the electronic equipment. Your affiant learned that the truck stolen from the Site on Sound building was later recovered abandoned on a rural road near Harwood, North Dakota. The truck was discovered on Sunday, January 22, 1995, in the afternoon hours.

Your affiant was again contacted by Mr. Craig Boisjolie on Tuesday, January 24, 1995, regarding a possible suspect. Your affiant was advised that a male individual identified as Michael Damron had frequented the Site on Sound business since the summer of 1994. He frequently came to the business and observed various stereo and electronic equipment. Your affiant was advised that Michael Damron had visited Site on Sound several times in the last couple of weeks and observed stereo equipment in a particular room where various stereo equipment and electronic equipment has been displayed. Your affiant was advised that much of the stereo and electronic equipment stolen in the burglary had been located in this display room. Also, a significant amount of the stereo and electronic equipment taken was the equipment that Mr. Michael Damron had expressed interest in to various employees and staff of Site on Sound. Through conversations with employees of Site on Sound, it was determined that Michael Damron has expressed knowledge about telephone communications equipment and devices, and alarm systems.

During the same period of time, Special Agent Wendy R. Loucks of the Federal Bureau of Investigation, was investigating the cutting and disabling of U.S. West telephone lines in the Cass and Clay County areas of North Dakota and Minnesota. On Tuesday, January 24, 1995, she was contacted by an FBI Agent in Mankato, Minnesota, and advised that they were aware of a person who had committed various burglaries of electronics and car parts stores by cutting telephone lines and disabling alarm systems. The individual was identified as Wade D. Arvidson. Special Agent Loucks was also advised that Wade Arvidson had gone through a legal name change in Minnesota. His current identification was unknown. Your affiant learned from Special Agent Loucks that Wade D. Arvidson may be a suspect in the Site on Sound burglary.

Your affiant and Special Agent Loucks traveled to the residence of Michael Damron, 1022½ Ninth Avenue North, Apt. # 3, Fargo, North Dakota. At the residence, your affiant observed a Corvette-like automobile covered by a tarp. Your affiant had been advised by employees of Site on Sound that Michael Damron owned a Corvette automobile as well as a Trans Am. While your affiant was at the residence, he observed an individual drive by the residence in a Trans Am automobile. Shortly thereafter, the same individual arrived at the residence and spoke with your affiant and Special Agent Loucks. He identified himself as Michael Damron. He also advised Special Agent Loucks that he had formerly been Wade D. Arvidson. Special Agent Loucks and your affiant talked with Michael Damron about the Site on Sound burglary occurring over the weekend and he denied any involvement in the burglary.

When your affiant arrived at the residence of Michael Damron, he and Special Agent Loucks observed footprints in the snow on the property in the vicinity of the Corvette vehicle. Your affiant and Special Agent Loucks had observed photographs taken by Fargo Police Department officers and other investigators working on the vandalism of U.S. West telephone communication lines. Your affiant and Special Agent Loucks could observe that the pattern of the footprints in the snow at the property of Michael Damron appeared to be very similar if not identically matching the photographs of footprints taken at least three locations where U.S. West telephone communications lines had been cut. The footprints at the residence of Michael Damron specifically appeared to match footprints at the location where U.S. West telephone communication lines had been cut just outside of the Site on Sound build-

ing on Main Avenue in Fargo which disabled the alarm system at Site on Sound as well as other telephone communications.

Your affiant had been advised that during the original burglary investigation at Site on Sound, Fargo Police Department officers observed a snowmobile track in the vicinity of the Site on Sound building. Fargo Police Department officers also observed footprints leading from the snowmobile track to the Site on Sound building. The snowmobile track was followed along railroad tracks in downtown Fargo and eventually lead [sic] to an abandoned snowmobile. Fargo Police Department officers determined the snowmobile had been stolen from Worthington, Minnesota, on or about January 13, 1995. Your affiant was informed by Special Agent Loucks that FBI Agents in Mankato, Minnesota, had indicated Wade Arvidson, a/k/a Michael Damron, had lived in Mankato, Minnesota, prior to moving to Sioux Falls, South Dakota, and ultimately moved to Fargo, North Dakota. Your affiant and Special Agent Loucks reviewed an Atlas map of Minnesota and eastern South Dakota and eastern North Dakota, and determined that Worthington is directly enroute between Mankato, Minnesota and Sioux Falls, South Dakota.

During the interview with Michael Damron, he indicated to your affiant and Special Agent Loucks that he is currently an electrical engineering student at North Dakota State University. He also declined a consent to search his residence."

[¶ 3] The magistrate issued the search warrant and police officers immediately proceeded to Damron's apartment. The search resulted in the seizure of many items. Based on the items seized, a warrant was issued for Damron's arrest, and subsequent search warrants were obtained permitting the search of his home, car, and a storage shed in Sioux Falls, South Dakota. Damron moved to suppress all evidence seized from these searches, claiming the magistrate did not have probable cause to issue the warrant to search his apartment. The trial court denied the motion. Damron entered conditional pleas of guilty under Rule 11, N.D.R.Crim.P., reserving his right to appeal.

## II

[¶ 4] Damron contends the items seized during the officers' search of his apartment should be suppressed because the magistrate did not have sufficient evidence to establish probable cause for issuance of the search warrant. Therefore, the search of his residence violated his Fourth Amendment right against unreasonable searches and seizures, made applicable to the states by the Fourteenth Amendment, and by Article I, Section 8 of the North Dakota Constitution.

[¶ 5] The trial court reviews a search warrant for validity to determine whether the information presented to the magistrate established probable cause for the search. *State v. Hage*, 1997 ND 175, ¶ 10, 568 N.W.2d 741. Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the North Dakota Constitution. *State v. Birk*, 484 N.W.2d 834, 836 (N.D.1992); *State v. Dymowski*, 458 N.W.2d 490, 495 (N.D.1990); *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). The existence of probable cause is a question of law. *Hage*, 1997 ND 175, ¶ 10, 568 N.W.2d 741.

[¶ 6] "Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *Id.* at ¶ 10, 568 N.W.2d 741 (quoting *Ringquist*, 433 N.W.2d at 212). All the information presented to establish probable cause should be taken together, not analyzed in a piecemeal fashion. *State v. Mische*, 448 N.W.2d 415, 418 (N.D. 1989). The magistrate is to make a practical, commonsense decision on whether probable cause exists to search that particular place. *Hage*, 1997 ND 175, ¶ 10, 568 N.W.2d 741; *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D. 1994). We generally defer to a magistrate's determination of probable cause, and will not disturb a magistrate's conclusion that probable cause exists if there is a substantial basis for the conclusion. *State v. Woehlhoff*, 540 N.W.2d 162, 165 (N.D.1995). When review-

ing a magistrate's determination of probable cause, a doubtful or marginal case should be resolved in favor of the magistrate's determination. *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983).

[¶ 7] We apply the totality-of-the-circumstances test to review whether information before the magistrate was sufficient to find probable cause, independent of the trial court's findings. *Hage*, 1997 ND 175, ¶ 11, 568 N.W.2d 741; *Rydberg*, 519 N.W.2d at 308. More than "bare-bones" information must be presented to the magistrate in order to establish probable cause. *Woehlhoff*, 540 N.W.2d at 166.

> "Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, ' "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the 'laminated' total." ' [*Ringquist*, 433 N.W.2d at 215–16, (*citing*) *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir.1978) (*en banc*), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), *quoting Smith v. United States*, 358 F.2d 833, 837 (C.A.D.C.1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967))."

*Id.*

### III

[¶ 8] Damron argues the magistrate should have disregarded the footprint evidence and evidence from the store owner Craig Boisjolie as falsely misleading, should have disregarded the unidentified agent's "modus operandi" evidence as stale and unreliable, and he argues the affidavit supporting the search warrant did not provide a nexus linking him to criminal activity and linking the criminal activity to his apartment. We disagree.

#### Footprint Evidence

[¶ 9] Damron argues the footprint evidence should be disregarded or "read out" of the affidavit because it gave the magistrate a false impression of what occurred. Damron relies on *State v. Morrison*, 447 N.W.2d 272 (N.D.1989), for the proposition false material should not be considered when reviewing probable cause. In *Morrison*, we applied the test set out in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), for determining whether a statement in an affidavit is false. *Morrison*, 447 N.W.2d at 274. Under *Franks*, the United States Supreme Court held negligence or innocent mistakes are insufficient to establish recklessness or deliberate falsity. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682; *see also State v. Padgett*, 393 N.W.2d 754, 757 (N.D.1986). Under *Morrison*, a defendant is required to prove a statement is in fact false, and the inclusion of the false statement amounted to perjury or reckless disregard for the truth. *Morrison*, 447 N.W.2d at 275. In *Morrison*, the defendant offered unrebutted evidence showing statements in the search warrant affidavit were not true. *Id.* at 276. The statements offered involved shoe prints and *modus operandi*, but, in actuality, the officer had no basis in fact for his statements. *Id.* In *Morrison*, we held the falsity was so blatant it amounted to a reckless disregard for the truth. *Id.* This case is clearly distinguishable from *Morrison*. Unlike the officer in *Morrison*, Officer Stone did not fabricate a footprint outside of Damron's apartment matching a footprint near the crime scene. Here, the evidence presented supports the existence of the footprint.

[¶ 10] "Whether or not the defendant has demonstrated recklessness or deliberate falsity is a finding of fact reviewed under the clearly erroneous standard." *Id.* at 275. A finding of fact is clearly erroneous if, although there may be some evidence to support it, the reviewing court on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Id.*

The record shows some of the information in a police report submitted by Officer Paul Lies is not consistent with some of the information in Officer Stone's affidavit. The police report states the first footprint Officer Stone and Agent Loucks found did not match the footprint near the burglary site. However, Officer Lies did find a matching footprint in the alley near Damron's apartment. Officer Lies believed that footprint to be the

footprint relied on in securing the search warrant for the apartment.

[¶ 11] Two *suppression hearings were held*, during which the trial court considered Damron's allegations of false statements made by Officer Stone. The trial court twice denied Damron's motion to suppress. · While the trial court did not make a specific finding on the allegations of falsity, we have previously recognized findings to be implied in a trial court's ruling denying a suppression motion. *See State v. Erickson*, 496 N.W.2d 555, 559–60 (N.D.1993) (holding trial court's implicit finding not clearly erroneous). By denying the motion to suppress, the trial court implicitly rejected Damron's allegations that incorrect statements made by Officer Stone were made intentionally or with a reckless disregard for the truth.

[¶ 12] Damron has not shown the information Officer Stone offered in his affidavit was intentionally misrepresented. Officer Stone believed he had a footprint that matched the footprint near the crime scene. Officer Lies, the police photographer gathering the footprint evidence, told Officer Stone those footprints did not match, but later informed Officer Stone that he had found another footprint that did match. According to his testimony, Officer Lies informed Officer Stone of the matching footprint before Officer Stone applied for the search warrant. We are not convinced the trial court's implicit finding was clearly erroneous.

[¶ 13] Damron also argues Officer Stone's description of the footprint as "just outside" of Site on Sound misled the magistrate, because Stone failed to inform the magistrate the footprint was nearly 600 feet away from the Site on Sound building. However, Damron fails to note the footprint was found from following identifiable tracks in deep snow from a telephone pole outside of the store to a point where the footprint could be clearly identified. The depth of the snow made it impossible to get a clearly identifiable footprint closer to Site on Sound. A party challenging the validity of a search warrant on the basis the information was intentionally or recklessly omitted from the affidavit in support of the warrant must demonstrate the information would have been material to the magistrate's finding. *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995).

Damron has not shown Officer Stone's failure to inform the magistrate of the exact distance was materially misleading. We do not believe characterizing the footprint as being "just outside" Site on Sound was materially misleading; therefore, the trial court's finding was not clearly erroneous.

### Craig Boisjolie Evidence

[¶ 14] Damron argues the information Officer Stone presented to the magistrate from Craig Boisjolie, owner of Site on Sound, was misleading, because some information was omitted. Damron's argument is based on semantics. Because he has failed to show how any inconsistencies or omissions are material, it merits no further discussion.

*Modus Operandi* and Reputation Evidence

[¶ 15] Damron argues information in Exhibit B regarding his reputation and evidence of *modus operandi* from an unidentified F.B.I. agent to Agent Loucks should be disregarded as unreliable and stale. We disagree.

[¶ 16] We generally consider observations of law enforcement officers involved in a common investigation as a reliable source in a magistrate's probable cause determination. *Hage*, 1997 ND 175, ¶ 16, 568 N.W.2d 741 (relying on *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); 2 Wayne R. LaFave, *Search and Seizure* § 3.5(a)(1996)). However, long chains of information through police channels should be avoided. *Hage*, 1997 ND 175, ¶ 16, 568 N.W.2d 741. Here, F.B.I. Agent Loucks was working with Officer Stone because the burglary at Site on Sound involved the cutting of U.S. West phone lines to disarm the alarm system. Agent Loucks had been investigating other cases involving the cutting and disabling of U.S. West lines in Cass County and Clay County. Agent Loucks was contacted by another F.B.I. agent who identified Wade D. Arvidson as a person who had committed several burglaries by cutting phone lines to disable alarm systems. The F.B.I. agent also knew Arvidson had undergone a name change. We do not view this chain of information through police channels to be long or attenuated. Some of the information from the unidentified F.B.I. agent

was corroborated by Damron himself. Damron admitted he was formerly known as Wade D. Arvidson. When law enforcement officers verify an informant's information through an independent investigation, the corroboration lends credence to remaining unverified information. *Id.* at ¶ 17, 568 N.W.2d 741. We do not view the information passed from the unidentified F.B.I. agent to Agent Loucks and presented by Officer Stone in his supporting affidavit to be unreliable.

[¶ 17] Likewise, staleness is not a factor here. It would have been preferable if Exhibit B had provided specific information indicating when the various burglaries the unidentified F.B.I. agent reported had taken place. However, probable cause is not determined solely by the time between the facts relied upon and the warrant's issuance. *Id.* at ¶ 12, 568 N.W.2d 741. Whether probable cause exists depends on the particular facts and circumstances of the case. *Johnson,* 531 N.W.2d at 278. The passage of time may be unimportant to the validity of probable cause when the course of conduct is of a protracted or continuous nature. *Id.* Here, the ongoing investigations of several crimes involving the cutting of telephone lines could be considered protracted. Instead of focusing on the unknown time of certain crimes, "[t]he proper inquiry is whether the magistrate, taking into consideration the nature of the crime, the nature of the criminal, the nature of the thing to be seized, and the nature of the place to be searched could reasonably believe that evidence of a criminal violation was probably at the specified location." *Id.*

[¶ 18] Here, Site on Sound was burglarized. Several burglaries involving cutting telephone lines were under investigation—a *modus operandi* of a specific and technical nature. Damron was suspected of burglarizing Site on Sound and keeping the stolen goods in his home. Damron had frequented Site on Sound and made clear his interest in, and knowledge of, electronics and alarm systems. Damron acknowledged where he lived. The footprints found near the crime scene matched the footprints found near Damron's residence only two days after the crime occurred. The only issue remaining is whether Damron's residence was a logical place for stolen goods or other evidence of the crime to be found.

### Nexus

[¶ 19] Damron argues the search warrant is invalid because the supporting affidavit does not create a nexus or chain of circumstantial links between the crime and Damron's apartment. While we agree many of the items in Exhibit B, standing alone, would be insufficient to show probable cause, under the totality-of-the-circumstances analysis, using a commonsense approach, we believe probable cause is present.

[¶ 20] Exhibit B described circumstantial evidence linking Damron to the crime. The owner and employees of Site on Sound were able to identify Damron's interest and knowledge of electronics and alarm systems from his frequent visits to the store. Special Agent Loucks had been investigating similar burglaries of electronics stores with the same *modus operandi* of disabling alarm systems by cutting telephone lines. Agent Loucks had information from an F.B.I. Agent that Wade Arvidson had committed various burglaries of electronics stores by cutting telephone wires. Damron admitted he was formerly known as Wade Arvidson. We have permitted the use of reputation evidence, along with other evidence, to support a determination of probable cause. *State v. Handtmann,* 437 N.W.2d 830, 835 (N.D. 1989); *Dymowski,* 458 N.W.2d at 497. The evidence in Exhibit B provided probable cause to believe Damron had committed the burglary. However, evidence showing probable cause to believe Damron had committed a crime does not establish probable cause to search his house for evidence of that crime. *Metzner,* 338 N.W.2d at 804. In order to search Damron's residence, there must be a nexus between the house to be searched and the evidence sought. *Id.*

[¶ 21] Damron relies on *State v. Mische* to argue probable cause did not exist because there was no link between the criminal activity and his home. In *Mische,* officers obtained a warrant to search the Bismarck home of Mische's parents based on evidence Mische had conducted drug activities there. *Mische,* 448 N.W.2d at 416. A search of the parents' residence did not produce evidence

of contraband, but did provide the officers with information Mische was living in a trailer home in Lincoln, a small town outside of Bismarck. *Id.* The officers obtained a search warrant for Mische's trailer home in Lincoln. *Id.* In *Mische,* we concluded no probable cause existed linking the trailer home in Lincoln to any criminal activity, when officers had no knowledge of any criminal activity occurring at the Lincoln residence. *Mische,* 448 N.W.2d at 421–22.

[¶ 22] This case is distinguishable from *Mische.* Unlike *Mische,* this case does not involve a second residence. Also, unlike *Mische,* this case provides a link between the criminal activity and Damron's home. *See State v. Olson,* 1998 ND 41, 575 N.W.2d 649.

[¶ 23] We have previously relied on *United States v. Lucarz,* 430 F.2d 1051 (9th Cir. 1970), when reviewing probable cause of whether a defendant's residence would be a place one would normally expect a defendant to hide evidence of a crime. *Metzner,* 338 N.W.2d at 805. In *Lucarz,* probable cause existed to believe the defendant had committed the crime, but law enforcement had not directly observed the defendant concealing stolen property at his residence. *Lucarz,* 430 F.2d at 1055. The Ninth Circuit Court in *Lucarz* concluded stolen property was likely to be at the defendant's residence because of the value and bulk of the property involved. *Id.; see also State v. Gathercole,* 553 N.W.2d 569, 574 (Iowa 1996) (concluding it reasonable to infer stolen property would be found at defendant's residence); *United States v. Jenkins,* 901 F.2d 1075, 1080–81 (11th Cir.1990); *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977). Here, the stolen merchandise had a value of $60,-000. The property was stereo and electronics equipment of a type that persons would normally use in their homes. Other evidence, such as footwear, is also likely to be kept in the home. When the object of the search is clothing worn at the time of the crime, the inference that the items are at the offender's residence may be compelling. *La-Fave* § 3.7d at 384.

[¶ 24] Exhibit B provides additional nexus. The footprints identified outside of Site on Sound that matched the footprints outside of Damron's residence connect the crime with Damron's home. While there is no direct observation of Damron wearing boots linking the footprints to Damron, a direct observation is not required. *Metzner,* 338 N.W.2d at 804. "The Fourth Amendment does not require an unbroken trail of evidence and allegation." *Id.* Here, Damron is connected to the crime through circumstantial evidence. As we noted in *State v. Frohlich,* 506 N.W.2d 729, 733 (N.D.1993), the nexus between the evidence to be sought and the place to be searched need not be established by direct observation. A direct link to Damron's residence is not necessary, as "circumstantial evidence alone may establish probable cause to search." *Id.* (citations omitted). We believe, in this case, the chain of circumstantial links between Damron and the crime, along with the footprint evidence linking the crime scene to Damron's residence creates a chain of circumstantial links that supply the connection between the stolen property and Damron's apartment.

[¶ 25] When considering the nature of the crime, the identity of the suspected criminal, the *modus operandi,* the type of property to be seized, the footprint evidence linking the crime to the immediate vicinity of Damron's residence, and the nature of the place to be searched, we do not think it unreasonable for the magistrate to believe evidence of a criminal violation was probably at Damron's residence.

## IV

[¶ 26] Under the totality-of-the-circumstances test, and giving due weight to the deference accorded a magistrate's finding in a doubtful or marginal case, we hold the magistrate had probable cause to issue the search warrant. The trial court's denial of Damron's motion to suppress, and the judgments and convictions in Criminal Nos. 970187 and 970188 are affirmed. As noted above, Damron's appeal in Criminal No. 970189 is dismissed.

[¶ 27] VANDE WALLE, C.J., and MARING, SANDSTROM, and MESCHKE, JJ., concur.