2001 ND 57

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Matthew Byron SCHMITT, Defendant and Appellant.**

**No. 20000037.**

Supreme Court of North Dakota.

March 20, 2001.

Brett M. Shasky, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

William Kirschner, Kirschner Law Office, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Matthew Byron Schmitt appealed from convictions entered upon conditional guilty pleas under N.D.R.Crim.P. 11(a)(2) to manufacturing a controlled substance and possession of a controlled substance with intent to deliver. We remand for further proceedings.

I

[¶ 2] Schmitt lived with Lester Holbrook in a house at 502 Morrison Street in West Fargo. In May 1999, a district judge, acting as a magistrate, issued a warrant to search the house. The search warrant was based on a May 26, 1999 sworn affidavit of Special Agent Brent Slade of the North Dakota Bureau of Criminal Investigations. As a result of evidence seized during the search, the State charged Schmitt with manufacturing a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia.

[¶ 3] Schmitt moved to suppress evidence seized during the search under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), claiming Agent Slade's affidavit included false statements which were made intentionally, or with reckless disregard for the truth, and after redacting those false statements, there was not probable cause to support the search warrant.

[¶ 4] After an evidentiary hearing, the trial court denied Schmitt's motion to suppress, concluding there was "[n]o showing ... that Agent Slade included any false statement in the affidavit 'knowingly and intentionally, or with reckless disregard for the truth,'" and "even redacting the questionable statements from the warrant affidavit, there remains sufficient credible evidence to withstand a probable cause challenge." Schmitt entered conditional pleas of guilty under N.D.R.Crim.P. 11(a)(2) to manufacturing a controlled substance and possession of a controlled substance with intent to deliver, and he appealed from the convictions.

II

[¶ 5] Schmitt argues the trial court erred in finding there was no showing Agent Slade's affidavit included any false statements which were made intentionally or with reckless disregard for the truth. Schmitt argues there were numerous false statements in Agent Slade's affidavit involving information provided to law enforcement officers by Donald Hurst, Tonya Paeper, and Ray Gross, and those statements were included in the affidavit intentionally or with reckless disregard for the truth. Schmitt argues, without those false statements, there was not probable cause to support the search warrant.

[¶ 6] Agent Slade's affidavit described his seven years of work and training as a law enforcement officer and narcotics investigator, and provided:

Your affiant has information that during the month of July, 1998, Special Agent Duane Stanley and Detective Mitch Burris conducted an interview of Donald Hurst. During the interview,

Hurst stated that Hurst knew Lester Holbrook to be involved with dealing methamphetamine and marijuana. Hurst stated that Holbrook would receive large amounts of methamphetamine on a regular basis through UPS. Hurst also stated that Holbrook would sell the methamphetamine out of his residence. Hurst stated that Hurst would be able to purchase methamphetamine or marijuana from Holbrook. Hurst stated that Hurst was related to Holbrook and was upset by the fact that Holbrook had been selling drugs for a long time and had not been caught.

On April 6, 1999, your affiant was contacted by Officer Terry Styf from the West Fargo Police Department. Officer Styf told your affiant that an informant that was working with the West Fargo Police Department had arranged to purchase marijuana from Lester Holbrook. Officer Styf asked your affiant to assist with the preparation and execution of the transaction.

On April 6, 1999, your affiant met with Officer Styf. Officer Styf explained to your affiant that the informant was Donald Hurst and that Hurst had arranged to purchase an ounce of marijuana from Holbrook. The deal was to take place at Holbrooks residence, 502 Morrison Street, West Fargo, North Dakota. A short time later, Hurst arrived and your affiant met with Hurst. Hurst stated to your affiant that the deal with Holbrook was already arranged and that Hurst had to call Holbrook on the telephone and let Holbrook know that Hurst was coming over to buy the marijuana. Your affiant instructed Hurst to call Holbrook. Hurst placed a telephone call to Holbrooks residence and received no answer. Your affiant asked Hurst to state what Hurst knew about Holbrooks drug dealing. Hurst stated that Holbrook had been selling drugs for many years. Hurst stated that Holbrook could get any amount of marijuana that he wanted and that Holbrook would also sell methamphetamine. Your affiant in-structed Hurst to make another telephone call to Holbrook. Hurst placed a telephone call to Holbrooks residence and received no answer. Your affiant instructed Hurst to go home and continue trying to make contact with Holbrook. Your affiant instructed Hurst to arrange a time with Holbrook to do the deal and then contact your affiant.

On April 7, 1999, your affiant contacted Officer Styf. Your affiant asked Officer Styf to verify that Holbrook was residing at 502 Morrison Street, West Fargo, North Dakota. Officer Styf called your affiant back a short while later and stated that Holbrook was the resident of 502 Morrison Street, West Fargo, North Dakota. Officer Styf stated that West Fargo Police Department records and power records indicate that Holbrook currently resides at 502 Morrison Street, West Fargo, North Dakota.

On April 9, 1999 Officer Styf conducted an interview of Tonya Paeper. During the interview, Paeper stated that Paeper had been at Holbrooks residence, 502 Morrison Street, West Fargo, North Dakota within the last five months. Paeper stated that while Paeper was present at Holbrooks residence, Paeper observed Holbrook selling marijuana to other individuals.

On April 19, 1999, your affiant met with Task Force Officer Pat Claus. TFO Claus stated that on April 14, 1999, Ray Gross had contacted TFO Claus. Gross stated that Gross had overheard Holbrook and another male named Phil talking about Holbrooks indoor marijuana grow in the basement of his residence, near Hardees in West Fargo, North Dakota. Your affiant knows that the address 502 Morrison Street, West Fargo, North Dakota is near the West Fargo Hardees.

On May 24, 1999, your affiant contacted Detective Gordy Olson at the Fargo Police Department. Your affiant asked Detective Olson to look Holbrook up in

the Fargo Police Department computer. Detective Olson gave your affiant the following information. On May 15, 1997, Holbrook was a suspect in a possession of marijuana case. In September, 1997, Holbrook was mentioned in an investigation for selling marijuana. On June 21, 1998, Holbrook was arrested for possession of marijuana and paraphernalia.

Detective Olson also told your affiant that the Fargo Police Department had the following intelligence reports on Holbrook. On February 13, 1995 during an interview of a confidential informant, the confidential informant stated that Holbrook sold marijuana. Other information that this confidential informant gave has been corroborated. On April 6, 1995, the Cass County Sheriff's Office conducted an interview of David Schweer. During the interview, Schweer stated that Schweer had been selling marijuana to Holbrook. On December 3, 1997 during an interview, a reliable confidential informant stated that Holbrook had been doing marijuana dealings with Clark Longie. Longie is known by law enforcement to be involved with dealing drugs to include marijuana. On March 23, 1999, during an interview of David Wald, Wald stated that Holbrook was selling marijuana, cocaine and methamphetamine. Wald stated that Wald had purchased methamphetamine from Holbrook approximately six months prior to this date.

On May 25, 1999, your affiant spoke with Officer Styf. Officer Styf stated that Officer Styf had spoken with Donald Hurst and that Hurst had given the following information. Hurst stated that Hurst had spoken with Holbrook on May 20, 1999. Hurst stated that at this time Holbrook said that he had marijuana for sale. Hurst stated that Holbrook intended to sell one ounce of the marijuana to Nathan Almklov within the next few days. Hurst stated that Holbrook was always in possession of marijuana and would be able to sell almost any amount of marijuana on short notice.

Based upon your affiants training and experience, your affiant knows that individuals involved in the sale and use of controlled substances often store the controlled substances and paraphernalia related to controlled substances in their residences.

Based upon the aforementioned information regarding Lester Holbrooks continued involvement with the use and sale of controlled substances, it is your affiant's belief that evidence of controlled substance violations may be found in the residence of 502 Morrison Street, West Fargo, North Dakota.

[¶ 7] Schmitt argues the uncontradicted testimony of Hurst, Paeper, and Gross established that statements in the affidavit which were attributed to them were significantly different than information they actually provided law enforcement officers.

[¶ 8] At the evidentiary hearing, Hurst denied that he told law enforcement officers Holbrook was "involved with dealing methamphetamine"; "Holbrook would receive large amounts of methamphetamine on a regular basis through UPS"; "Holbrook would sell the methamphetamine out of his residence"; and Hurst "would be able to purchase methamphetamine" from Holbrook. Although Hurst testified he unsuccessfully tried to call Holbrook twice on April 6, 1999, Hurst denied he had arranged to purchase marijuana from Holbrook on that date or arranged any deal with Holbrook. Hurst testified he never arranged to go to Holbrook's house to purchase marijuana. Hurst also denied telling law enforcement officers that Holbrook intended to sell one ounce of marijuana to Nathan Almklov.

[¶ 9] Paeper testified she had been in the driveway at Holbrook's residence, but she had never been in the house, and she denied seeing Holbrook selling marijuana to anyone. Gross testified the conversation he overheard did not include Holbrook, but was between three other people who were talking about an indoor marijua-

na grow in the basement of Holbrook's house.

[¶ 10] In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held a defendant in a criminal proceeding has the right, under the Fourth and Fourteenth Amendments to the United States Constitution, to challenge the veracity of an affiant's statements in an affidavit supporting a search warrant. The Court said:

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
>
> . . . .
>
> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-exam-

ine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.*, at 155–56, 171–72, 98 S.Ct. 2674.

[¶ 11] Under *Franks*, 438 U.S. at 156, 98 S.Ct. 2674, if the defendant makes a substantial preliminary showing to justify an evidentiary hearing,[1] the defendant has the burden at that hearing to prove by a preponderance of evidence that false statements in the warrant affidavit were made intentionally or with reckless disregard for the truth.[2] *See State v.*

---

1. The State does not dispute Schmitt made a sufficient preliminary showing to justify a *Franks* hearing. *See State v. Rangeloff*, 1998 ND 135, ¶ 15, 580 N.W.2d 593 (holding defendant's preliminary showing insufficient to justify *Franks* hearing).

2. During oral argument to the Court, Schmitt cited *State v. Malkin*, 722 P.2d 943 (Alaska 1986), and suggested the State had the burden of proof. In *Malkin*, at 946, the Alaska Supreme Court held, under its state constitu-

tion, that once a defendant establishes the right to a *Franks* hearing, the burden shifts to the State to show by a preponderance of evidence that false statements in an affidavit were not made intentionally or with reckless disregard for the truth, and if the State does not meet that burden, the misstatements must be excised and the remainder of the affidavit tested for probable cause.

Schmitt did not cite *Malkin* in the trial court or his appellate brief to this Court, and

*Wamre,* 1999 ND 164, ¶ 24, 599 N.W.2d 268; *State v. Tester,* 1999 ND 60, ¶ 11, 592 N.W.2d 515; *State v. Damron,* 1998 ND 71, ¶ 9, 575 N.W.2d 912; *State v. Morrison,* 447 N.W.2d 272, 275 (N.D.1989); *State v. Padgett,* 393 N.W.2d 754, 757 (N.D.1986). *See* 2 Wayne R. LaFave, *Search and Seizure,* § 4.4(d), pp. 506–07 (3d Ed.1996). Whether the defendant establishes statements in a warrant affidavit were made intentionally or with reckless disregard for the truth is a finding of fact reviewed under the clearly erroneous standard. *Damron,* at ¶ 10; *Morrison,* at 275; *Padgett,* at 757.

[¶ 12] A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction a mistake has been made. *E.g., Moilan v. Moilan,* 1999 ND 103, ¶ 9, 598 N.W.2d 81. A trial court's findings of fact must be sufficient to enable an appellate court to understand the trial court's factual determinations and the basis for its conclusions of law. *E.g., Webster v. Regan,* 2000 ND 18, ¶ 6, 605 N.W.2d 808. The mere recitation of testimony is not equivalent to a finding of fact. *In re T.J.K.,* 1999 ND 152, ¶ 13, 598 N.W.2d 781. A court must specifically state subordinate facts upon which its ultimate factual conclusions rest, *see Benson v. Benson,* 495 N.W.2d 72, 78 (N.D.1993), and findings of fact which merely state a party has failed in the burden of proof are inadequate. *Federal Land Bank v. Lillehaugen,* 404 N.W.2d 452, 459 (N.D.1987).

[¶ 13] Here, the trial court recited the testimony of Hurst, Paeper, and Gross, and observed their testimony was different from statements attributed to them in the affidavit. The State offered no testimony at the *Franks* hearing. Therefore the testimony of Hurst, Paeper, and Gross, *if*

*believed,* establishes by a preponderance of evidence that the assertions in the affidavit are false. However, the court did not make a finding about their credibility. After reciting their testimony, the court said there was "[n]o showing ... Agent Slade included any false statement in the affidavit 'knowingly and intentionally, or with reckless disregard for the truth.'" The court said there was "no showing that Officer Styf supplied false information to Agent Slade 'knowingly and intentionally, or with reckless disregard for the truth.' At most, it has been shown by [Schmitt] that a portion of the information provided by Officer Styf concerning Donald Hurst's statements was misstated, or miscommunicated while being passed along the information path from Hurst, to Styf, to Slade, to the magistrate." The court decided "the evidence viewed in a light most favorable to [Schmitt's] position would cause the Court to delete several statements from the warrant affidavit, and review what remains for a probable cause determination," and "even redacting the questionable statements from the warrant affidavit, there remains sufficient credible evidence to withstand a probable cause challenge."

[¶ 14] Under *Franks,* a false statement in a warrant affidavit is a statement that misleads a neutral and detached magistrate into believing the stated fact exists, which in turn affects the magistrate's evaluation of whether probable cause exists. *Morrison,* 447 N.W.2d at 274. Here, there was no evidence presented at the hearing to contradict Schmitt's witnesses' testimony. The trial court did not make a finding regarding the veracity of the information attributed to Hurst, Paeper, and Gross, and the court's mere recitation of their testimony is not equivalent to a finding of fact. *See T.J.K.,* 1999 ND 152, ¶ 13, 598 N.W.2d 781. The court's lack of finding on veracity, and the sheer number of alleged false statements sup-

---

he has not marshaled a separate state constitutional argument for shifting the burden of proof to the State. It is well established that

we do not consider issues raised for the first time at oral argument on appeal. *E.g., Roise v. Kurtz,* 1998 ND 228, ¶ 10, 587 N.W.2d 573.

port an inference of reckless disregard for the truth. *See Morrison*, 447 N.W.2d at 276 (holding clearly erroneous trial court's finding defendant did not establish that statements in affidavit were false and made recklessly).

[¶ 15] Federal courts have said that reckless disregard for the truth under *Franks* is analogous to the First Amendment standard for libel articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and have held an affiant acts with reckless disregard for the truth if the affiant " 'in fact entertained serious doubts as to the truth of his' allegations." *United States v. A Residence Located at 218 Third St.*, 805 F.2d 256, 258 (7th Cir.1986) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984)). *See generally* 2 LaFave, *Search and Seizure* at § 4.4(b), pp. 487–88. *Cf.* N.D.C.C. § 12.1–02–02(1)(c) (defining "recklessly" for criminal culpability as engaging in conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks). In *Residence Located at 218 3rd Street*, at 258, quoting *Williams*, 737 F.2d at 602, the court explained reckless disregard for the truth may be proved inferentially "from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *See also United States v. Pritchard*, 745 F.2d 1112, 1116 (7th Cir. 1984). Mere negligence by the affiant, however, does not constitute reckless disregard for the truth. *See Franks*, 438 U.S. at 171, 98 S.Ct. 2674.

[¶ 16] The trial court's conclusory findings do not explain the standard it applied for evaluating reckless disregard for the truth and do not specifically state subordinate facts upon which the court's ultimate conclusion rests. *See Benson*, 495 N.W.2d at 78. Merely stating that Schmitt failed in the burden of proof is inadequate. *See Lillehaugen*, 404 N.W.2d at 459. We decline to sanction these conclusory findings in this context, because false statements in a warrant affidavit seriously undermine the integrity of the warrant process and strip the probable cause requirement of real meaning. *See Franks*, 438 U.S. at 168, 98 S.Ct. 2674. The number of alleged false statements attributed to Hurst, Paeper, and Gross, if actually false, obviously could have misled the magistrate. We believe the integrity of the warrant process and the sanctity of the requirement for probable cause for a warrant require more than incomplete and conclusory findings about the information used to procure the warrant. Moreover, the court's sparse and conclusory findings are problematic because the court alternatively ruled that "even redacting the questionable statements from the warrant affidavit, there remains sufficient credible evidence to withstand a probable cause challenge."

[¶ 17] In *Damron*, 1998 ND 71, ¶¶ 6–7, 575 N.W.2d 912, (citations omitted), we outlined the requirements for probable cause:

"Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." All the information presented to establish probable cause should be taken together, not analyzed in a piecemeal fashion. The magistrate is to make a practical, commonsense decision on whether probable cause exists to search that particular place. We generally defer to a magistrate's determination of probable cause, and will not disturb a magistrate's conclusion that probable cause exists if there is a substantial basis for the conclusion. When reviewing a magistrate's determination of probable cause, a doubtful or marginal case should be resolved in favor of the magistrate's determination.

We apply the totality-of-the-circumstances test to review whether informa-

tion before the magistrate was sufficient to find probable cause, independent of the trial court's findings. More than "bare-bones" information must be presented to the magistrate in order to establish probable cause.

"Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, ' "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the 'laminated' total." ' "

[¶ 18] Whether there is probable cause to issue a search warrant is a question of law. *Wamre*, 1999 ND 164, ¶ 5, 599 N.W.2d 268; *Damron*, 1998 ND 71, ¶ 5, 575 N.W.2d 912. If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal. *Wamre*, at ¶ 7.

[¶ 19] Evidence of criminal activity unrelated to a defendant's home is not sufficient to provide probable cause to search that home. *See Tester*, 1999 ND 60, ¶¶ 22–24, 592 N.W.2d 515; *State v. Mische*, 448 N.W.2d 415, 419–22 (N.D.1989). Evidence of criminal activity must not be stale, and unsupported conclusory allegations are insufficient to establish probable cause. *State v. Handtmann*, 437 N.W.2d 830, 835 (N.D.1989); *State v. Ringquist*, 433 N.W.2d 207, 213–14 (N.D.1988).

[¶ 20] We recognize that deference is ordinarily given to a magistrate's determination of probable cause. Here, however, if all the alleged false statements in Slade's affidavit are redacted, the remainder of the information in the affidavit effectively states Holbrook was involved with dealing marijuana for a long time; Holbrook currently lived at 502 Morrison Street; Holbrook was suspected of possession of marijuana in 1997; Holbrook was

mentioned in an investigation for selling marijuana in 1997; and Holbrook was arrested for possession of marijuana and paraphernalia in 1998. The affidavit also mentioned "intelligence reports" from 1995, 1997, and March 23, 1999, about Holbrook's involvement in drug dealing, and conclusory statements by Hurst that Holbrook "was always in possession of marijuana and would be able to sell almost any amount of marijuana on short notice." After redacting the alleged false statements, we conclude the stale and conclusory information in the remainder of the affidavit provides an insufficient basis to establish that identifiable objects of criminal activity would probably be found at the house at 502 Morrison Street. *See Tester*, 1999 ND 60, ¶¶ 22–24, 592 N.W.2d 515 (holding insufficient nexus between defendant's home and criminal conduct); *Mische*, 448 N.W.2d at 419–22 (same).

[¶ 21] In view of the trial court's failure to make a finding on the truthfulness of the alleged false statements in Agent Slade's affidavit, or on the credibility of Schmitt's witnesses, coupled with the court's conclusory findings about reckless disregard for the truth and its erroneous application of the law of probable cause to the redacted affidavit, we believe further proceedings are necessary in this case. We remand for the trial court to make necessary findings on the truthfulness of the alleged false statements in the warrant affidavit. If the court finds Agent Slade included false statements in his affidavit, the court must find whether those statements were included intentionally or with reckless disregard for the truth and must evaluate probable cause accordingly. On remand, the court may hear additional evidence about the circumstances under which any false statements were included in the affidavit. If the court ultimately decides the warrant was not supported by probable cause, the court must allow Schmitt to withdraw his guilty pleas.

[¶ 22] We remand for further proceedings consistent with this opinion.

[¶23] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.